1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HIGH SIERRA HIKERS ASSOCIATION,

   Plaintiff,

  v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, et al.,

   Defendants.

_____/

No. C-09-4621 JCS

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION TO AUGMENT AND
SUPPLEMENT ADMINISTRATIVE
RECORD**

**[Docket No. 42]**

**I. INTRODUCTION**

  Before the Court is a motion filed by Plaintiff High Sierra Hikers Association ("Plaintiff") to
augment and supplement the administrative records lodged by Defendants[1] in this case.  The matter
was referred to the undersigned for decision.  *See* Docket No. 65.  A hearing was held on June 17,
2011.  Having considered the arguments of counsel at the hearing and the papers submitted, the
Motion is GRANTED IN PART AND DENIED IN PART.

//

//

//

---

  [1]Defendants are United States Department of the Interior; the National Park Service ("the Park
Service" or "NPS"); the Sequoia and Kings Canyon National Parks, Kenneth L. Salazar, in his official
capacity as Secretary of the Interior; Jonathan B. Jarvis, in his official capacity as Director of the Park
Service; Rory Westberg, in his official capacity as Acting Regional Director of the Park Service; and
Karen Taylor-Goodrich, in her capacity as Superintendent of SEKI (collectively "the Government").

**United States District Court**
For the Northern District of California

## II.    BACKGROUND

### A.    Overview of Plaintiff's Case

The Wilderness Act generally prohibits commercial enterprises in wilderness areas but authorizes commercial services "to the extent necessary for activities which are proper for realizing the recreational or other wilderness purposes of the areas." 16 U.S.C. § 1133(c), (d)(5).  To comply with the Act, an agency must "make a finding of 'necessity' before authorizing commercial services in wilderness areas."  *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 646 (9th Cir. 2004).  The agency may authorize commercial services only "to the extent necessary" and must demonstrate that the amount of commercial use allowed "was no more than was necessary to achieve the goals of the Act."  *Id.* at 647.

According to the Plaintiff, the Government has adopted a General Management Plan for the Sequoia and Kings National Parks ("GMP"), which allows commercial stock use up to current levels, and issued and renewed Packer Permits, without making any such "extent necessary" finding. Compl. ¶¶ 79-80.  Plaintiff alleges that the GMP and accompanying Environmental Impact Statement violate NEPA because they fail to analyze an adequate range of reasonable alternatives or to consider the environmental harms caused by continued stock use up to the current levels.  *Id.* ¶¶ 80-82, 95-96, 102-104.  Plaintiff also alleges that the Park Service's continued issuance and renewal of Packer Permits also violates NEPA because the Government did not complete an environmental impact statement but instead improperly relies on categorical exclusions.  *Id.* ¶¶ 109-112.

### B.    Preparation of the Administrative Records & the Parties' Meet and Confer

The Government answered the Complaint on December 10, 2009.  Docket No. 11.  Because the claims are subject to judicial review under the APA, the Government  lodged the Administrative Records with the Court on April 30, 2010.  Docket Nos. 24-26.  The Government organized the Records as follows: (1) the administrative record for the GMP ("a programmatic planning document that provides conceptual direction of the management of the two Parks") (Opp. at 1); (2) separate administrative records for the 2009 Packer Permits issued to each of fifteen pack stations; (3) one

administrative record for the Concession Extension issued to Cedar Grove Pack Station; and (4) a pool of documents common to all non-GMP administrative records. (Docket Nos. 24-25.)  The first record is referred to as the "GMP Record" or "GMP AR."  The second, third, and fourth records are referred to collectively as the "Packer Permit Record" or "Packer Permit AR."

After reviewing the Records lodged by the Government, Plaintiff identified documents that it alleges the Government has refused to include in either the GMP Record or the Packer Permit Record.  The Plaintiff and the Government met and conferred regarding their disputes, yet according to the Plaintiff, "the Records remain incomplete and do not present an accurate depiction of the agency actions that culminated in the issuance of the GMP and renewal of the Packer Permits."  Motion at 6.  The preset Motion followed.

III.    ANALYSIS

A.    The Plaintiff's Motion

Plaintiff argues that additional documents are necessary to complete and augment the records and to ensure effective judicial review of the GMP Record and Packer Permit Record.  Motion at 6.  With respect to the GMP Record, Plaintiff asserts that the Defendants have refused to include documents that are relevant to the GMP's compliance with the Wilderness Act and NEPA.  Regarding the Packer Permit Record, Plaintiff contends that the Defendants have refused to include documents regarding Wilderness Act and NEPA compliance for Packer Permits, as well as documents that Plaintiff asserts demonstrate the inadequacy of the environmental assessments on which the Park services relied in issuing Packer Permits.   Finally, Plaintiff argues that the Defendants have improperly withheld documents from the GMP Record on the basis of the deliberative process privilege, attorney work-product doctrine, and attorney-client privilege for drafts or comments on preliminary drafts later published.[2]

//

_____

[2]As will be explained below, in its Reply Brief, Plaintiff has agreed to withdraw its request for documents withheld on the basis of privilege.

**United States District Court**
For the Northern District of California

**B.      The Government's Opposition**

The Government opposes the Motion in part.  After the filing of the Motion, the Government agreed to supplement the GMP administrative record with certain documents identified by Plaintiff in its Motion.  Opp. at 2.  However, the Government maintains that there is no basis to include "the vast majority of the 107 documents that HSHA requested."  *Id.*

The Government argues that the Plaintiff's Motion is premised upon a misunderstanding of the agency decisions under review in this case, which provide the appropriate scope for the administrative records.  Opp. at 6.  Specifically, the Government explains that the GMP is a broad plan that sets forth the programmatic direction for two parks, Sequoia and Kings Canyon National, which includes far more than just stock use in the wilderness – the issue of paramount concern to Plaintiff here – but addresses a wide range of issues relating to activities and natural resource management in the more than 800,000 acres of park land.  *Id.* (citing GMP, Vol. 1, at p. 43, GMP SEKI 0020307, GMP AR\3FEIS\3CFEIS).  "Therefore, the GMP AR contains information commensurate with the general programmatic decisions contained in the GMP.  Unless specifically considered by NPS staff, the GMP AR does not contain site-specific information that would be considered in an implementation level plan tiered to the GMP."  Opp. at 7 (citing Taylor-Goodrich Decl., ¶ 3).  In contrast to the broad GMP, the individual commercial use authorizations referred to by the Government as "CUAs" (collectively referred to herein as the "Packer Permits") are limited to information that is related to particular concession contracts.  *Id.*  According to the Government, the Plaintiff  "attempts to blur the critical distinction between the programmatic GMP decision and the narrowly-focused CUA permits, insisting that all documents in NPS custody that discuss stock use in the wilderness must be included in the ARs for both the GMP and CUAs."  *Id.*

The Government also argues generally that the Plaintiff's Motion fails to consider the "phased or tiered decision-making process" that the Government argues must occur in this case.  The Government argues that the first stage is the "programmatic stage" which is followed by an "implementation stage" in which specific site projects are proposed and assessed.  *Id.* at 8.  The

4

United States District Court

For the Northern District of California

Government argues that "[f]or SEKI's planning and decision-making, the types of documents and level of detail to support the programmatic GMP are much different than the documents and detail required either for the annual CUAs or when the agency proceeds to the next planning level stage, when it will prepare the Wilderness Stewardship and Stock Use Plan to provide more specific guidance for stock use." *Id.*

### C.     Plaintiff's Reply

In the reply, Plaintiff has narrowed the list of documents it seeks.  Plaintiff has agreed to remove all documents sought on the basis of waiver of privilege, and has provided an updated table setting forth the documents that remain at issue.  *See* Reply at 4, n. 1, Exh. A.  Plaintiff has also submitted an updated table, which includes the documents in numerical order and includes the documents that the Government has agreed to provide.  *See id*, Exh. B.  Plaintiff reiterates its arguments in support of the documents it seeks to have included in the record, and argues that Defendants are incorrect in their assertion that they need only provide documents on which the government directly relied.  Rather, Plaintiff argues that documents on which the Government indirectly relied during the administrative process are relevant and should be included here. Moreover, extra-record evidence may be included to demonstrate that the Government ignored relevant factors when reaching its decision.  Reply at 1.

The Plaintiff argues that the Government is incorrect in its assertion that documents showing particular environmental impacts from current levels of stock use are too specific to be included in the GMP because it provides only a "programmatic direction" and that a future "Wilderness Stewardship and Stock Use Plan" will provide more specific protocols.  Reply at 1(citing Opp. at 3). According to the Plaintiff, the Government has been promising – and failing to deliver – this site-specific protocol for many years.  Moreover, Plaintiff asserts that the Ninth Circuit has held that a court can order an agency to assess the impacts of its programmatic decisions "prior to the individual site-specific analysis" and that allowing stock use at pre-existing levels in the face of documented damage resulting from overuse may constitute a violation of NEPA and the Wilderness Act.  Reply

**United States District Court**

For the Northern District of California

1   at 2 (*citing High Sierra Hikers' Ass'n v. Blackwell*, 390 F.3d 630, 643 (9th Cir. 2004).  Accordingly,

2   "[t]he Government may not ignore specific documentation of the adverse environmental impacts of

3   its decisions based upon a long-promised, but never completed, site-specific analysis." *Id.*

4       **D.**    **Legal Standard**

5       The claims in the Plaintiff's Complaint are subject to judicial review under the

6   Administrative Procedures Act, ("APA").  The APA provides that agency action may be set aside

7   where it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

8   with law." 5 U.S.C. § 706(2)(A).  The APA limits the scope of judicial review to the administrative

9   record.

10      Courts can supplement an administrative record with documents that were before the agency

11  and pertain to the merits of its decision because the whole record "is not necessarily those

12  documents that the agency has compiled and submitted as 'the' administrative record," *Thompson v.*

13  *United States Dep't. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989), but rather "includes everything

14  that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v*

15  *Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1992); *see also Citizens to Preserve*

16  *Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (stating that review is to be based on full

17  administrative record "before the agency" at time of decision).

18      The administrative record "consists of all documents and materials *directly or indirectly*

19  considered by the agency decision-makers and includes evidence contrary to the agency's position."

20  Opp. at 5; Reply at 2-3 (citing *Thompson* v. *United States Dep't. of Labor*, 885 F.2d 551, 555 (9th

21  Cir. 1989) (internal quotation omitted) (emphasis supplied); *California ex rel. Lockyer v. United*

22  *States Dep't of Agriculture*, No. C 05-03508 (EDL), 2006 WL 708914, at *2  (N.D. Cal. Mar. 16,

23  2006)).  "An incomplete record must be viewed as a fictional account of the actual decision-making

24  process." *Portland Audubon Soc'y*, 984 F.2d at 1548 (internal citation and quotation marks

25  omitted); *see also Pub. Power Council*, 674 F.2d at 793-94 (holding that administrative records must

26

27

28       6

United States District Court
For the Northern District of California

1  include documents that explain agency's actions and upon which agency directly or indirectly

2  relied).

3       The Ninth Circuit allows a reviewing court to consider extra-record materials in four limited

4  circumstances: (1) to determine whether the agency has considered all relevant factors and has

5  explained its decision; (2) when the agency has relied upon documents or materials not included in

6  the record; (3) when it is necessary to explain technical terms or complex matters; and (4) when a

7  plaintiff makes a showing of agency bad faith. *Center for Biological Diversity v. U.S. Fish &*

8  *Wildlife Service*, 450 F.3d 930, 943 (9th Cir. 2006) *citing Southwest Center for Biological Diversity*

9  *v. United States Forest Service*, 100 F.3d 1443, 1450 (9th Cir.1996).[3]

10      Though widely accepted, these exceptions are narrowly construed and applied. *See, e.g.,*

11  *Camp v. Pitts*, 411 U.S. 138, 142-43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (holding that for

12  extra-record material to be considered, a plaintiff must first make a showing that the record is

13  inadequate); *see also Animal Defense Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) ("The

14  [plaintiff] makes no showing that the district court needed to go outside the administrative record to

15  determine whether the [agency] ignored information"). "A satisfactory explanation of agency action

16  is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of

17  the agency's decision, but on whether the process employed by the agency to reach its decision took

18  into consideration all the relevant facts." *Asarco, Inc. v. U.S. Environmental Protection Agency*, 616

19  F.2d 1153, 1160 (9th Cir.1980) (emphasis added).

20

21       [3]The Government argues that even if Plaintiff has "made the required showings" the correct

22  remedy is not to allow Plaintiff to supplement the record with additional evidence, but to "obtain further
    explanation from the agency itself, either by remanding to the administrative agency or allowing the

23  agency to submit explanatory declarations." Opp at 5-6 (citing *Florida Power & Light*, 470 U.S. at 744
    and *Midwater Trawlers Co-op. v. Dep't. Of Commerce*, 393 F.3d 994, 1007 (9th Cir. 2004). Neither

24  case cited by the government supports the Defendant's argument. First, Plaintiff has not sought a de
    novo hearing as prohibited by *Florida Power & Light*. Second, *Midwater Trawlers Co-op*, does not

25  support Defendant's position. Both Plaintiff and Defendant cite numerous cases where a party has
    identified shortcomings in the record and the district court has allowed supplementation of the record

26  in order to correct those deficiencies. *See e.g., Midwater Trawlers Co-op*, 393 F.3d at 1007(cited by
    the Defendant) and *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, C-06-4484 SI, 2007 WL

27  3049869 (N.D. Cal. Oct. 18, 2006) (Cited by Plaintiff).

28                                                        7

**E.      Application of the Law to the Facts of the Case**

      **1.      Documents On Which the Government Directly or Indirectly Relied**

Plaintiff argues that the Government has excluded from the GMP and Packer Permit Records numerous documents on which it directly or *indirectly* relied.  These include monthly stock use reports and wilderness permits with trip itineraries and details on specific unnecessary activities; residual biomass reports that Plaintiff argues the Defendant mistakenly believes are already in the GMP Record; end-of-season reports by back-country rangers and other documents detailing the impacts from stock use; and documents that the Defendant has included or agreed to include in the GMP Record but will not agree to include in the Packer Permit Record, even though the issuance of Packer Permits directly relies on the GMP.  Plaintiff also argues that many of these documents should also be included in the Administrative Record for the independent reason that they demonstrate that the Defendant has ignored relevant factors.  The documents that Plaintiff argues should be included in the AR and the Defendant's objections will be considered separately below.[4]

      *a.      Documents That May Demonstrate Specific Stock Use Activities -- Summarized in the GMP Record*

The Government argues that it need not include in the GMP Record monthly stock use reports written by commercial packers for the years 1997-2007 (Document 5) and wilderness permits issued to commercial pack operators by the US Forest Service (Documents 6-7).  The Government asserts that "this type of detailed information, with monthly reports from permittees, was not relevant to the broad, conceptual, park-wide programmatic direction that the GMP encompassed" and that this type of information is already included elsewhere in the AR.  Opp. at 9.

The Plaintiff concedes that summaries of the monthly stock use reports and wilderness permits are in the GMP Record; however, Plaintiff argues that the underlying documents were indirectly relied upon by the Government and thus should be made part of the complete record. Moreover, the Government's refusal to include them in the GMP AR on the grounds that they are

_____

[4]The Court does not address the requests that are no longer in dispute.

**United States District Court**
For the Northern District of California

duplicative ignores the fact that these documents contain detailed information that is not in the summaries.

The Court agrees with the Plaintiff. If the Government relied upon the summaries and agrees that they are properly part of the AR, then the documents from which those summaries were derived are relevant and were, at a minimum, indirectly relied upon. *See e.g., Ctr. for Biological Diversity*, 2007 WL 3049869, at *4; *Lockyer*, 2006 WL 708914, at *2.

The Court is also persuaded by the Plaintiff's argument that the monthly stock use reports and wilderness permits may be used to argue that the agency ignored a relevant factor – specific unnecessary activities that were permitted, and would continue to be permitted, under the GMP. The Plaintiff points out that "[t]he surest way to identify these specific unnecessary activities is to look at trip itineraries." Reply at 6. Because these itineraries are contained in the monthly stock use reports and wilderness permits that Plaintiff seeks to include in the GMP Record, but not in the summaries that are currently in the GMP Record, the Court finds it appropriate to augment the AR with these documents. Documents 5-7 should be added to the GMP Record in this case.

> b. *Residual Biomass Reports*

Plaintiff argues that Residual Biomass Reports from 2002 to 2006 (Document 30) should be included in the GMP AR. Plaintiff argues that the Residual Biomass Monitoring (RBM) program is in large part the basis for the Government's disputed conclusion that its decisions will not harm the environment. *See* GMPSEKI 0037439 (RBM program is "central component of wilderness meadow management").

The Government does not dispute the relevance of these reports or that they should be included in the Record. Rather, the Government states its belief that reports from 1994 to 2004 "already appear in the AR", and that summaries from 2005 to 2006 do not exist. Opp. at 14. Plaintiff clarifies in its Reply that it does not expect the Government to include reports from 2005 to 2006 if no such reports exist, although it notes that the Government has agreed to create summaries of residual biomass data for 2005 as well as a spreadsheet with data for 2006 and add them to the

United States District Court

For the Northern District of California

GMP Record.  Taylor-Goodrich Decl., ¶ 26.  Plaintiff further argues that the Government is mistaken as a factual matter with respect to reports from 2002 to 2004; the documents to which it refers in its Opposition and supporting declarations are appendices containing charts and tables from reports for 2002 to 2004, not the reports themselves.

The Government indirectly relied upon these documents.  All existing Residual Biomass Reports for the years 1994-2004 and the agreed-upon information for the years 2005 and 2006 should be included in the GMP AR.

> c.      *Reports and Proposals Drafted by NPS Regarding Environmental Impacts of Stock Use*

The Government did not include in the GMP AR a series of end-of-season ranger station reports (Documents 14-17, 20-21, 23-24), documents pertaining to field work in the parks (18-19), and documents regarding staff proposals for temporary meadow use restrictions (26, 28).  Opp. at 10.

Plaintiff argues that these documents "establish a continuous record of stock impacts, complaints and inadequate agency responses, with reports by Park Service personnel perceiving specific impacts firsthand that will be absent from the Record if these documents are not included." Reply at 6-7.   Plaintiff further argues that these documents were indirectly relied upon by the Government and are necessary to complete the GMP AR.  The Court agrees in part.

The Government argues that documents 14-17 and 20-24 should not be included in the AR because they were used in compiling Temporary Meadow Use Restrictions, not in compiling the GMP; thus, according to the Government, the Plaintiff attempts to "transform the GMP into a detailed, site-specific plan."  Opp. at 11.  However, as Plaintiff correctly points out, the Government included the Temporary Meadow Use Restrictions in the GMP Record.  Opp. at 11.

The Government argues that documents 18-19, 26, and 28 were "incorporated into a 1990 study" that is included in the GMP AR, but argues that the underlying documents were not considered in developing and approving the GMP.  Opp. at 11.  Because the Government admits

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

relying on the derivative documents, the Court agrees that it has indirectly relied upon the source documents for the restrictions and the study. They should be included in the GMP AR.

The Court also agrees with the Plaintiff that Documents 14-17 ( "End of Season" reports for the years 1987-1997) are of relevance to the challenged decision and will be added. However, document 21 post dates the Record of Decision on the GMP and therefore will not be added. Accordingly, Document Nos. 14-20, 23-24, and 26-28 should be added to the GMP AR.

        *d.*      *Documents in the GMP Record Analyzing Stock Use Impacts*

The Plaintiff argues that the Government must include in the Packer Permit Record a number of documents (33 documents) that are in or will be added to the GMP Record (Documents 13, 33, 36, 37, 40, 45-56, 73-83, 97-100, and 103). The decisions to issue Packer Permits directly rely on the GMP, and thus indirectly rely on the documents in the GMP Record. Plaintiff argues that these documents also demonstrate that the Government's continued issuance of Packer Permits in reliance on the flawed GMP ignores relevant factors.

The Court is not persuaded by this argument. Under Plaintiff's reasoning, *all* documents in the GMP AR should be added to the Packer Permit Record. Plaintiff has not made the required specific showing of why these documents are needed to supplement the Packer Permit Record.

**2.      Documents That May Demonstrate That the Government Ignored Relevant Factors**

The Plaintiff argues that the Government has excluded from the GMP and Packer Permit records documents that demonstrate that the Government ignored relevant factors in its decision making. These include, for example, documents demonstrating that hikers used stock trips to circumvent wilderness permit quotas. They also include correspondence in which the Government allegedly admits that the 1986 stock use plan relied on in issuing the Packer Permits here was inadequate and outdated. Plaintiff argues that the GMP and Packer Permit records should be augmented with these documents. *See Hodel*, 840 F.2d at 1437.

1                              *a.*       *Documents That May Demonstrate That Stock Trips Are Used to*

2                                   *Circumvent Wilderness Permit Quotas*

3      The Government did not include several Forest Service documents that Plaintiff argues

4 demonstrate that hikers circumvent wilderness permit quotas by booking stock trips that enter SEKI

5 from neighboring Forest Service lands (Documents 8-11).  The Government argues that these

6 documents are internal US Forest Service documents that were not provided to NPS during the

7 development of the GMP.  Opp. at 9.  The Government also points out that one of the documents,

8 Document #11 dated May 13, 2008, post-dates the GMP ROD, which the NPS could not have

9 considered in approving or developing the GMP.  *Id.*

10      The Plaintiff responds that there are documents in the GMP Record demonstrating that the

11 Government was warned that the public was using commercial stock permits to circumvent the

12 quota system.  *See, e.g*., GMPSEKI 0016994.  Plaintiff argues that although the Government was

13 made aware of this issue, it did nothing to assess the need for such trips or consider the issue in its

14 environmental analysis.  Reply at 8.  Plaintiff further argues that SEKI and Inyo National Forest

15 claim to cooperate on stock use policies (*see, e.g.*, GMPSEKI 0017090, 17092, 17097) (discussing

16 working relationship and offer to exchange data regarding stock use)), and that "[t]he Government

17 would easily have discovered the information in Documents 8-10 if it had contacted the Forest

18 Service" and that these documents show that "the Forest Service was aware hikers who could not get

19 permits would use stock to get around trailhead quotas, and that individuals at the Forest Service

20 were even instructing hikers to do so, yet the Government ignored this factor."

21      The Court agrees.  The documents are relevant to a factor that the Government may have

22 ignored in reaching its decision on the GMP.  However, Document 11 dated May 13, 2008 post-

23 dates the GMP ROD and NPS could not have considered it.  Document 11 will not be added to the

24 GMP record.

25 //

26 //

27

28                                         12

United States District Court

For the Northern District of California

b.      *Documents That May Show the Inadequacy of the Environmental Assessments*

The Government did not include in the Packer Permit Record memoranda, emails, and letters in which members of the public and the Government and its internal staff state that the 1986 Stock Use and Meadow Management Plan ("SUMMP") and its accompanying Environmental Assessment, on which the Government relied in issuing Packer Permits, were inadequate and in need of revision. *See* # Documents 31, 44, and 105-107.  According to Plaintiff, "[t]hese documents undermine the Government's claim to have considered all relevant factors when issuing the 2009 Packer Permits." Reply at 9.

The Government argues that these documents were not considered and therefore should not be part of the AR.

The Plaintiff responds that the documents showing that the Government ignored relevant factors should be added to the administrative record because although those documents were not considered, they fall into the category of documents that should be part of the AR because they *should have been* considered.  *See Trout Unlimited*, 2006 WL 1207901, at *3 ("[D]ocuments that were *not* relied upon by a decisionmaker, or evidence relating to such documents and their non-consideration, have been held to be necessary elements of an administrative record.") (emphasis in original).  Document 107 (which is  a 2001 email), contains internal complaints from Government staff regarding the ineffectiveness of the stock use monitoring techniques in the SUMMP.  Similarly, Document 31 is an internal memorandum in which one of SEKI's Chief Rangers finds that the SUMMP failed to address aesthetic and other impacts of stock use.  Although the Government urges the Court to disregard this as a "20-year-old document," Plaintiff points out that the Government continues to rely, when issuing its Packer Permits, on the more than 20-year-old Environmental Assessment that this document criticizes. Documents 44, 105, and 106 (a 2001 email, 2003 letter, and 2006 letter) show that many issues have arisen over the 20-plus years since the drafting of the SUMMP.  Plaintiff argues, accordingly, that the documents are necessary because they demonstrate

1  that the Government knew the SUMMP to be outdated and in need of revision, yet continued to rely

2  on it in issuing the Packer Permits.

3      The Court agrees with the Plaintiff.  Plaintiff has made the requisite showing of relevance

4  and identified an area of the Record that is incomplete (missing documents that should have been

5  considered by the Government).  *See e.g., Trout Unlimited, supra* at *3.   Documents 31, 44 and

6  105-07 are added to the Packer Permit AR.

            *c.*     *Documents Regarding the Government's Alleged Lack of Compliance*
7
                  *with NEPA When Issuing Packer Permits*
8

9      As lodged, the Packer Permit Record does not include correspondence that the Plaintiff

10  characterizes as documents "in which the Park Service itself acknowledges, and then attempts to

11  deny, the need for NEPA analysis before issuing Packer Permits."  Reply at 10 (Documents 1, 2, 4,

12  85-94, 96, 101, and 102).  According to Plaintiff, these documents "reveal a pattern of continually

13  acknowledging the need for, but then repeatedly deferring, adequate NEPA compliance. They are

14  therefore necessary to show that the Government knew it was not complying with NEPA but

15  nonetheless continued to issue Packer Permits."  *Id.* at 11.

16      The Government argues that the above documents should not be included in the Packer

17  Permit Record because "[t]he court's review must be confined to those documents on which the NPS

18  relied" and "the agency, not the plaintiff, is entitled to determine what constitutes the administrative

19  record."  Opp. at 17.  The Court disagrees.

20      First, the law is clear (and the Government agrees in its Opposition) that the court's review

21  need not be confined to only those documents on which the Government directly relied.  Rather,

22  documents on which the Government indirectly relied and documents necessary to show that the

23  Government ignored relevant factors may be included in the Records.  Moreover, the Ninth Circuit

24  has said that an agency is not entitled to determine what constitutes the final administrative record.

25  *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The whole administrative

26

27

28

record, however, is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record.") (emphasis in original) (internal quotation omitted).

The Court finds that augmenting the AR with these internal documents is appropriate here. As the Government admits, "[t]hese documents generally are internal NPS documents and correspondence with HSHA and others from 2002-2004 concerning a proposed Environmental Assessment (EA) that NPS then was considering for individual business permits, the predecessors to the current CUAs." Opp. at 17 (citing Taylor-Goodrich Delc., ¶ 36). Although the Government argues that the NPS did not consider these documents in issuing the 2009 CUAs or the 2008 Extension, the Government has not provided a basis to exclude them from the record, given its admission that they were considered in the predecessor Packer Permits. Documents on which the Government indirectly relied are appropriately part of the administrative record, as are documents which may demonstrate that the Government ignored relevant factors.

> d. *Documents That May Show the Government's Alleged Lack of Compliance with the Wilderness Act When Issuing Packer Permits*

The Plaintiff argues that the Packer Permit Record should include internal emails, letters, and a pack station website printout demonstrating that the Government's practices in issuing Packer Permits do not comply with the Wilderness Act. *See* Documents 12, 42, 84, 92, 95, and 104. Plaintiff argues that the Government ignored evidence of unnecessary commercial activity when it continued to issue packer Permits under the same practices, and that these documents should be included to show that the Government incorrectly relied upon these old practices.

The Government responds that there are documents showing NPS's compliance with the Wilderness Act in the Packer Permit Record and that these are sufficient. Opp. at 16. However, the fact that there are some documents demonstrating compliance, does not mean that the Government may exclude all evidence of its non-compliance.

The Government argues further that certain of the documents showing unnecessary commercial activities (Documents 12, 84, 92, 95, and 104) were considered in developing the

United States District Court

For the Northern District of California

15

United States District Court

For the Northern District of California

1   GMP but not in issuing individual Packer Permits.  As discussed above, the Government's

2   response that documents were "not considered" misses the point.  Documents showing a factor (such

3   as unnecessary commercial activities) that the government ignored may be added to the

4   administrative record.

5           The Government disputes the relevance of an email in which an NPS employee cautions

6   that approved commercial activity must be described as "necessary and appropriate" (Document

7   84) on the ground that this "necessary and appropriate" language refers to a different legal

8   requirement separate from the Wilderness Act.  However, Plaintiff argues that Document 84 might

9   be used to argue that the Government knew it needed to determine commercial activity to be

10  "necessary" before authorizing it – and failed to do so in the Wilderness Act.  The Court agrees with

11  the Government, and finds that the Plaintiff has not made the requisite showing with respect to this

12  document.  The terms "necessary and appropriate" as used in this email refer to a different legal

13  standard, not the standard under the Wilderness Act.

14          Finally, the Government argues that it could not have relied upon Document 42 because that

15  document post-dates the Packer Permits issued in May 2009 and December 2008.  The Government

16  points out that this document "is dated September 15, 2010."  Opp. at 17.  Plaintiff correctly notes,

17  however, that September 15, 2010 is the date the website was *printed* for use in the Plaintiff's

18  Motion, not the date the website was *created* or published and that the copyright notice at the bottom

19  of the document states, "Copyright 2000-2003," (and that the website archive.org reveals that the

20  key language on this website was published at least as early as March 6, 2001.  *See*

21  http://web.archive.org/web/*/http://www.sierrapacktrip.com/spotpack.html;

22  http://web.archive.org/web/20010306062348/http://www.sierrapacktrip.com/spotpack.html.)

23          The Court is not persuaded by the Government's argument.  The Packer Permit AR should

24  be supplemented with 12, 42, 92, 95 and 104.

25  //

26  //

27

28                                                  16

*e.*       *Residual Biomass Monitoring Documents*

The Government did not include, in the GMP Record, an internal email, a report on SEKI's plant ecology program, and a proposal drafted by a SEKI specialist, all of which Plaintiff argues are relevant to SEKI's Residual Biomass Monitoring ("RBM") Program. *See* Documents 3, 25, and 29. Plaintiff argues that these documents are necessary to demonstrate that the Government did not consider all relevant factors in developing the GMP, because the Government ignored shortcomings in SEKI's existing methods of monitoring and maintaining "residual biomass."

Document 3 is an email regarding a meeting with commercial packers, which Plaintiff argues reveals that many commercial packers do not comply with requirements for reporting their stock use in SEKI.  Reply at 12.  The Government disputes this characterization, arguing that the email does not indicate any lack of compliance.  Plaintiff responds that the email states as an item to be emphasized, "do better with reporting (how can we give this some teeth for non-compliance?)" Plaintiff asserts that "[t]he clear implication is that both inadequate reporting and non-compliance are serious concerns."  Reply at 12.  The Government also argues that this email was not considered.

This email might demonstrate that the Government ignored relevant factors.  The Court therefore agrees that it should be added to the AR.

Plaintiff argues that Documents 25 and 29, a report on SEKI's plant ecology program and a proposal by a SEKI specialist, are necessary to demonstrate that the Government ignored a relevant factor—the known shortcomings of the Government's current RBM program.  The Plaintiff argues that "[t]he Government implicitly accepts that such documents are relevant by pointing out that a study with a discussion of the development of residual biomass standards is in the GMP Record (Opposition at 14), but ignores that Document 29 is of even greater relevance as it was authored by SEKI's own specialist."  Reply at 12.   Plaintiff argues that Document 29 is necessary because it sets forth the exact RBM standards that the Government employed, discusses the inadequacies of the program (including the fact that the program was ineffective given the lack of ungrazed reference

United States District Court
For the Northern District of California

1   areas in meadows), and suggests solutions to those inadequacies (most of which were allegedly

2   never implemented).

3        The Government argues that this 1993 proposal (Document # 29) was not considered and

4   further that the GMP AR already contains ample information on this issue.  Opp. at 14.  As such, the

5   Government argues, "Document # 29 duplicates information already in the AR without providing

6   any useful analysis to assist the court in reviewing the NPS's decisions."  Opp. at 15.

7        The Government argues that Document 25 – an overview of the plant ecology program

8   crated in 1996 – is similarly redundant to material already in the GMP AR.[5]  The Plaintiff responds

9   that "Document 25 sets out several important factors that are not addressed by the Government's

10  existing RBM program—for example, that insufficiently trained rangers are in charge of collecting

11  materials for analysis, and that finding a reference area in an ungrazed meadow near the core area of

12  each grazed meadow is so difficult as to undermine the accuracy of the RBM program."  Reply at

13  13.  Plaintiff argues that this document demonstrates that the Government ignored the inadequacy of

14  its existing RBM program when it developed the GMP.

15       The Court agrees that the GMP record should be augmented with these documents.  These

16  documents may show that the Government ignored relevant factors, not adequately covered by other

17  evidence in the record.

18            *f.*      *Documents Demonstrating That the Government May Have Ignored*
             *Scientific Studies*

19

20       The Plaintiff argues that Documents 34 and 35 (studies providing scientific evidence) are

21  necessary to demonstrate that one of the Government's assumptions – that there is no correlation

22  between stock use and water contamination – is incorrect.  Plaintiff argues that these studies are

23

24

25       [5]In particular, the Government argues that the 2003 peer-reviewed "Abbott Study", which is in

26  the AR provides an analysis of the approach used to monitor residual biomass utilized by the NPS in
     SEKI.  Opp. at 15 (citing Taylor-Goodrich Decl., ¶ 27; Abbott et al., "Analysis of Residual Biomass

27  Monitoring Program in Sequoia and Kings Canyon National Parks (2003)).

28                                                    18

**United States District Court**
For the Northern District of California

1  necessary to demonstrate that the Government ignored relevant scientific factors in reaching its

2  decision.[6]

3        The Government has agreed to include similar studies from 2004 (Documents 33 and 36), but

4  declined to include Document 35, which post-dates the GMP ROD.  However, according to Plaintiff

5  these two studies present "only part of the picture."  One of the 2004 studies now in the GMP

6  Record cautions that there may be a correlation between stock use and water contamination, but adds

7  as a caveat that a further, multi-year project should be undertaken to fully study water pathogens.

8  Document 34 is that multi-year project, which analyzes results from previous years, combines them

9  to create a continuous set, and breaks areas down by type of use (*e.g.*, pack animal, wild animal, or

10  human use).  Document 34 concludes that surface waters in areas with significant pack animal use

11  do have higher coliform levels than areas used only by humans, and those bacteria stem from stock

12  use, not human use.  Document 34 thus supports Plaintiff's hypothesis of the 2004 study that a

13  correlation exists between stock use and water contamination.

14        The Court concludes that Document 34 post-dates the decision at issue, and therefore should

15  not be added to the GMP AR.

16        Document 35 is a 1979 wilderness impact study (prepared by the Sierra Club) that addresses

17  the correlation between stock use and water contamination.  The Government argues that the age of

18  document 35 – over thirty years old – renders it unnecessary to the issues before the Court.  Plaintiff

19  responds that the document's age establishes that the connection between stock use and water

20  contamination is not a new scientific theory that the Government was justified in ignoring.  Reply at

21  14.

22        The Court finds that the age of Document 35, and the fact that more recent scientific studies

23  are in the GMP on this issue, make it inappropriate for inclusion in the AR.

24  //

25

26  _____

27        [6] Document 35 also explains the relevance of aesthetic impacts and introduction of nonnative
plant species as factors that Plaintiff argues should have been considered by the Government.

28                                                                                       19

1
2

             g.    *Documents That May Demonstrate That the Government Ignored the Impact of Stock Introducing Non-Native Plant Species*

3        Plaintiff argues that an email and a study discussing the impact of stock in introducing

4 non-native plant species should be included in the GMP Record. *See* Documents 32 and 43.

5 Plaintiff asserts that these documents are necessary to demonstrate that the Government ignored

6 relevant factors.

7        The Government argues that Document 32, a 2005 NPS internal email, should not be

8 included because it was not considered in developing and approving the GMP. Opp. at 13. The

9 Government states that the email discusses what topics might have been reviewed in a future

10 Wilderness Stock Use and Stewardship Plan for the Parks and that might have had bearing on a

11 proposed pack station concession contract. Taylor-Goodrich Decl. ¶ 23. The Government points

12 out that the concession contract was not finalized and the Wilderness Stock Use and Stewardship

13 Plan was proposed to be developed after the approval of the GMP ROD. *Id.* Because the

14 Government did not consider Document 32, it argues that it should not be included as part of the

15 AR.

16        Plaintiff responds that Document 32 reveals the Government was aware of a possible

17 solution to the detrimental impact of non-native plant species – weed-free feed – but ignored that

18 relevant factor in the GMP. Reply at 14. Further, the SEKI employee who drafted the email noted

19 that the plan was to have weed-free feed required on public lands by 2005 but that had not been

20 done. *Id.* The employee believed this could be accomplished in another "3-4 years." Plaintiff

21 argues that it has now been another five years, and this solution still has not been implemented. *Id.*

22 Plaintiff also argues that whether the GMP was supposed to be a "programmatic decision" does not

23 mean that the Government can ignore both the impacts of non-native plant species and possible

24 solutions. The Plaintiff argues that because the GMP reached specific decisions that heavily impact

25 the environment, the Court can order the Government to assess the cumulative impacts of its

26 decisions prior to the completion of a proposed future site-specific analysis. *Id.*

27
28

United States District Court

For the Northern District of California

1   The Court finds that Plaintiff has made the requisite showing that the AR should be

2   supplemented with Document 32.  Again, the government's argument misses the point.  This

3   document may show that the Government ignored a relevant factor – the impacts of non-native plant

4   species.  The parties may argue the significance of this document at the summary judgment stage;

5   the Government's arguments do not provide a basis to exclude it.

6   Document 43 is a 2010 study on the spread of invasive plants in rangelands.  The

7   Government argues that Document 43 is too recent for inclusion in the AR.  The Plaintiff responds

8   that this document cites numerous pre-2007 studies and confirms that the Government ignored

9   relevant factors regarding exotic plant species that were known at the time of the GMP and continue

10  to be relevant today.  The Court is not persuaded by this argument.  Document 43 is a 2010 study,

11  and is too recent for inclusion in the Record.  Because it post-dates the Record of Decision, the

12  Court finds it inappropriate to include it.

13  　　　　h.　　　*Documents That May Demonstrate That the Government Ignored*

14  　　　　　　　*Aesthetic Factors*

15  Plaintiff argues that a memorandum by SEKI's Chief Ranger demonstrates the Government's

16  failure to provide for preservation of the unique aesthetic qualities of SEKI's wilderness in a

17  consistent fashion, and should be included in the GMP Record.  Document 31.  Plaintiff argues that

18  the Government was aware of the substantial aesthetic impacts of current levels of stock use as a

19  factor relevant to its decision, but the Government ignored such impacts.

20  The Government argues this document should not be included in the GMP Record because

21  the Government will provide further responses to the aesthetic impacts issue in the future.  Opp. at

22  13 ("NPS made clear . . that comments from all persons, including those proposing limits on stock

23  use, 'will be more properly addressed in a future wilderness stewardship and stock use plan.").

24  Plaintiff correctly responds that, again, the Government seeks to defer analysis of its decisions that

25  have had a negative impact on the environment by referring to the possibility of a future site-specific

26  plan.

27

28

The Court concludes that Plaintiff has made the requisite showing that the GMP AR is deficient without Document 31.  Without this document, the record regarding effects of stock use on the aesthetic qualities of SEKI's wilderness is inadequate.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Augment or Supplement the Administrative Record is GRANTED IN PART AND DENIED IN PART as follows:

| Document & Record | Ruling |
| --- | --- |
| Document 5-7 (GMP Record) | GRANTED. |
| 30 (GMP Record) | GRANTED. All existing Residual Biomass Reports from 1994-2004 and the agreed-upon information for 2005 and 2006. |
| 14-20, 23-24, 26, 28 (GMP Record) | GRANTED. |
| 21 (GMP Record) | DENIED. |
| 13, 33, 36-37, 40, 45-56, 73-83, 97-100, 103 (Packer Permit Record) | DENIED. |
| 8-10 (GMP Record) | GRANTED. |
| 11 (GMP Record) | DENIED |
| 3, 31, 44, 105-107 (Packer Permit) | GRANTED. |
| 1, 2, 4, 85-94, 96, 101-102 (Packer Permit) | GRANTED. |
| 12, 42, 92, 95, 104 (Packer Permit) | GRANTED. |
| 84 (Packer Permit) | DENIED. |
| 3, 25, 29 (GMP Record) | GRANTED. |
| 34, 35 (GMP Record) | DENIED. |

United States District Court
For the Northern District of California

| 32<br>(GMP Record) | GRANTED. |
| 43<br>(GMP Record) | DENIED. |
| 31<br>(GMP Record) | GRANTED. |

IT IS SO ORDERED.

Dated: June 24, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

23