IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

HIGH SIERRA HIKERS ASSOCIATION,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,

    Defendants.

_____/

No. C 09-04621 RS

**VACATUR ORDER**

## I. INTRODUCTION

Following the passage of the "Sequoia and Kings Canyon National Parks Back-country Access Act," H.R. 4849, 112th Cong. (2012) (the "SEKI Access Act"), the parties were directed to address the effect, if any, of the law on the Court's remedy order. The parties complied, submitting separate briefs, in which plaintiff contended the interim relief needed to be preserved in order to ensure compliance with all statutory requirements, while defendants argued that because the Act established a new statutory framework, it was necessary to vacate certain portions of the remedy order. For the following reasons, defendants' request for partial vacatur is granted.

## II. FACTUAL BACKGROUND

In January 2012, the Court granted in part and denied in part the parties' cross-motions for summary judgment, holding that the National Park Service ("NPS") violated the Wilderness Act by

United States District Court
For the Northern District of California

1  adopting the General Management Plan ("GMP") and by issuing Packer Permits without conducting

2  the requisite necessity finding. A hearing on the issue of remedy was set for May 23, 2012. In

3  response, NPS determined it would stop issuing further permits until and unless sanctioned by the

4  Court. This decision prompted pressure on Congress by various groups to authorize stock use in the

5  interim for the 2012 packing season, culminating in the SEKI Access Act in the House of

6  Representatives, which passed on April 27, 2012.

7      The House proposal was then referred to the Senate which approved an amended version on

8  May 17, 2012, and returned it to the House. 158 Cong. Rec. S3292 (May 17, 2012), 2012 WL

9  1760106, 9-10. The House acted quickly, adopting the Senate's changes and passing the bill within

10  twenty-four hours. 158 Cong. Rec. H3147-03, 2012 WL 17777197 (May 18, 2012). The enrolled

11  bill was thereafter presented to President Obama for his consideration.

12      With the bill pending before the President, this Court conducted its remedy hearing to

13  determine the proper redress for NPS's statutory violations. Specifically, at issue was High Sierra

14  Hikers Association's ("HSHA") request for partial vacatur of the GMP and an interim reduction in

15  commercial stock services to 80% of normal levels.[1] At the conclusion of the hearing, pursuant to

16  the parties' stipulation, the Court authorized NPS to distribute Packer Permits at 80% of 2007 levels

17  pending the issuance of its remedy order. This order was finalized a few days later, directing the

18  partial vacatur of the GMP, ordering NPS to complete the Wilderness Stewardship Plan ("WSP")

19  and the specialized Wilderness Act finding by January 31, 2015, and imposing a 20% interim

20  reduction on commercial services to 2,560 stock use nights. The order further requested that the

21  parties submit briefs in the event the Access Act was signed into law in which they were to address

22  the effect, if any, of the new legislation on the remedy order.

23      A few weeks later, President Obama signed the Access Act into law as Public Law Number

24  112-128, 126 Stat. 373. The final version provides in relevant part:

25

26          (a) CONTINUATION OF AUTHORITY.--Until the date on which the
            Secretary of the Interior (referred to in this Act as the "Secretary")

27          completes any analysis and determination required under the

28  _____

[1] HSHA also sought two additional interim measures, (1) a prohibition on the use of commercial services to transport unnecessary items into wilderness areas; and (2) a ban on commercial stock grazing in particularly vulnerable meadows, which the Court declined to adopt.

United States District Court
For the Northern District of California

Wilderness Act (16 U.S.C. 1131 et seq.), the Secretary shall continue to issue authorizations to provide commercial services for commercial stock operations (including commercial use authorizations and concession contracts) within any area designated as wilderness in the Sequoia and Kings Canyon National Parks (referred to in this section as the "Parks)" at use levels determined by the Secretary to be appropriate and subject to any terms and conditions that the Secretary determines to be appropriate.

(b) WILDERNESS STEWARDSHIP PLAN.--Not later than 3 years after the date of enactment of this Act, the Secretary shall complete a wilderness stewardship plan with respect to the Parks.

PL 112-128, June 5, 2012, 126 Stat 373.  In an effort to clarify the effect of this law, Senators Boxer and Feinstein, along with Congressman Nunes, sent a letter to NPS's director, explaining that the Act "is intended to serve as a stand-alone authorization for commercial packstock" and "supplement[s] all preexisting statutory authorizations that apply more generally to all wilderness areas." The letter further explained that the "legislation provides the Secretary [of Interior] with complete discretion to determine the appropriate use levels, terms and conditions for commercial packstock." (Defs'. Ex. 1 at 1).  Based on the Act's language and the contemporaneous statement regarding congressional intent, defendants reason that the law supersedes the Wilderness Act and alters certain portions of the Court's remedy order.  Accordingly, they seek vacatur of those parts of the remedy order which: (1) impose a deadline of January 31, 2015 for completion of the WSP and specialized Wilderness Act findings; and (2) limit commercial stock to 2,560 stock use nights. Plaintiff objects to this request, contending that the Court's interim measures are consistent with the purposes of the SEKI Access Act and are appropriate to ensure compliance with the Wilderness Act and the National Environmental Policy Act ("NEPA").

                                III. DISCUSSION

        Vacatur is the appropriate remedy when a case has "become moot due to circumstances unattributable to any of the parties."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship.*, 513 U.S. 18, 23 (1994) (quoting *Karcher v. May*, 484 U.S. 72, 82, 83 (1987)).  Mootness results where "intervening legislation has settled a controversy involving only injunctive or declaratory relief." *Chem. Producers & Distribs., Ass'n v. Helliker*, 463 F.3d 871, 879 (9th Cir. 2006) (quoting *Bunker Ltd. L'ship v. United States*, 820 F.2d 308, 311 (9th Cir. 1987)).  Here, following the Court's issuance of its remedy order vacating portions of the GMP, directing NPS to complete the WSP by

United States District Court
For the Northern District of California

1    January 31, 2015, and imposing a 20% interim reduction on stock use, Congress passed and the

2    President signed into law the SEKI Access Act providing the Secretary of the Interior with the

3    authority to issue permits at levels he or she considers appropriate.  As evidenced by the statute's

4    language and contemporaneous circumstances, the Act created a temporary exception to the

5    Wilderness Act, thereby superseding the imposed interim relief and rendering portions of the

6    remedy order moot.

7        The Access Act empowers the Secretary of the Interior to continue issuing Packer Permits

8    "at use levels determined by the Secretary to be appropriate and subject to any terms and conditions

9    that the Secretary determines to be appropriate," until he or she "completes the analysis and

10   determination required under the Wilderness Act."  PL 112-128, June 5, 2012, 126 Stat 373.  It thus

11   establishes a limited time period during which the Secretary may authorize Packer Permits without

12   full Wilderness Act compliance.  In other words, while NPS completes the required specialized

13   finding the Court deemed incomplete in its summary judgment order, the Secretary can forego

14   statutory compliance for the discrete issue of commercial stock use.

15       The Ninth Circuit has endorsed such statutory carve outs, *Cal. Save Our Streams Council,*

16   *Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989), recognizing that when Congress passes a

17   "detailed statute" intended to provide a "specific exception" to a "broader [statutory] scheme," the

18   more "precisely drawn" statute must be applied.  *Id.* (quoting *Block v. N.D. ex rel. Bd. Of Univ. &*

19   *School Lands*, 461 U.S. 273, 285 (1983)); *see also Alliance for the Wild Rockies v. Salazar*, 672

20   F.3d 1170, 1174 (9th Cir. 2012); *Consejo de Desarrollo Economico, Mexicali v. United States,* 482

21   F.3d 1157, 1169 (9th Cir. 2007) ("[W]hen Congress has directed immediate implementation

22   'notwithstanding any other provision of law,' we have construed the legislation to exempt the

23   affected project from the reach of environmental statutes which would delay implementation.").

24   Accordingly here, where Congress has passed a "precisely drawn" statute tailored to the specific

25   purpose of authorizing commercial stock use, the Secretary of the Interior is temporarily exempted

26   from Wilderness Act compliance, and, consequently, from the Court's interim remedy order.  As the

27   Act supersedes the remedy order demanding Wilderness Act compliance, vacatur of the portions

28   limiting commercial stock use to 2,560 stock use nights and requiring completion of the WSP by

January 2015 is appropriate.

## IV.  CONCLUSION

Defendants' request for partial vacatur is granted.  The portions of the remedy order reducing commercial stock use by 20% and ordering completion of the WSP by January 31, 2015 are hereby vacated.  In that no further matters remain to be adjudicated, the Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: 7-27-12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE